Judge Underwood
delivered the opinion of the Court.
Stephenson filed his bill for the purpose of compelling Hopkins to convey to him the legal title to fifty acres of land, which Hopkins had acquired from John Fowler, in virtue of a bond for the title on Fowler, assigned by Stephenson, the obligee, to Hopkins. On the day the assignment was made, to-wit: 29th April, 1811, Hopkins executed a bond to Stephenson in the penalty of $500, with the following condition :
“Whereas George Stephenson hath this day assigned to John Hopkins, for value received, a certain bond on John Fowler, for two tracts of land on Taylors creek, one containing seventy-five acres, the other fifty acres, be it understood, that if the said Stephenson shall, against the 25th of December next, pay, by himself or his order, to the said Hopkins, $>23, also pay all moneys which the said Hopkins shall pay to John Fowler for the said Stephenson, all which payment is to be made to the said Hopkins at the same time; the condition of the above obligation is such, that the said Hopkins is bound in the above penalty to reassign to the said Stephenson, the said bond which he has received of said Stephenson on John Fowler, or deliver him bond or bunds on John Fowler, including the same land; if this condition is complied with by said Hopkins, the above obligation to be void, otherwise to remain in full force and virtue in law,” Fowler’s bond to Stephen, *342 son bears date the 29th September, 1810, and stipulates, in consideration of $262 50 cents, to be paid him, and a relinquishment to be made to him by Stephenson of all his recourse on Michael Cassidy, who sold the same lands to Stephenson, that a conveyance with general warranty shall be made, on request, after the money is paid and relinquishment executed by Stephenson. Fowler’s bond describes the two tracts of land. It fixes no time when the money is to be paid or the relinquishment to be executed.
Endorsement on Fowler’s bond.
Whether á mortgage or a conditional sale, depends upon the facta attendant upon each case. The intention of the parties to be collected from circumstances. If Hopkins had paid the whole sum due Fowler, it would have been evi» deuce of conditional sale; not having done so, he treated the transaction as a mortgage If mortgager has received advances from mortgagee, to the value of thing mortgaged, at the date of mortgage, & has delayed to redeem an unreasonable length of time the chancellor will not interpose, to enable him to redeem, against mortgagee in possession, to the injury or prejudice of Mortgagee.
*342 On the bond of Fowler is this endorsement, “26th June, 1811,1 have this day received of John Fowler his obligation to convey to me fifty acres of the within described land, it being George Stephenson’s improvement. (Signed) JOHN HOPKINS.”
Stephenson insists that the transaction was in the nature and character of a mortgage, and by it no more was intended than to secure Hopkins the payment of the $23, and such sums as he might pay Fowler. Hopkins insists that it was a conditional sale, and that he should not now be disturbed in the legal title. We are to decide between them. To distinguish between a mortgage and a conditional sale, is often a perplexing question. In Prince vs. Bearden, 1 Marshall, 170, it is said that “each case must in some measure depend on its own circumstances, and rest upon the legal discretion of the court. See also Burn, title, Mortgage, letter B. The difficulties in the present case have been greatly increased by the awkwardness and want of skill manifested in drawing the obligation from Hopkins to Stephenson, That paper leaves many things for conjecture. It does not appear that Hopkins was to have interest on the $23 advanced, nor is it stipulated that he shall have interest on the money which he may pay to Fowler. Hopkins takes no obligation on Stephenson by which he could coerce from him the payment of the money on the 25th December next, after the date of Hopkins’ bond to Stephenson. It would seem from the papers, that it was entirely at the option of Stephenson whether to pay the money or not, and that his right to demand a re-assignment of Fowler’s bond, depended on paying to Hopkins, by the 25th of December, the amount of money Hopkins had *343 before that time advanced to Fowler, and the $23 in addition. This would be a literal construction, and if adopted by the court, would result in declaring the transaction a conditional sale. But its operation might have an effect so injurious to the interests of Stephenson, that it is very difficult to say that the parties ever intended that their contract should receive that construction. Hopkins was not bound to make payment to Fowler;he was atliberty to do so if he choose; but the inference is forcible that there was a verbal understanding that he should do it. If he made no payment to Fowler, it cannot be believed that he was to have both tracts of land for $23, if Stephenson failed to repay it at the day. That the parties intended such a thing on that event, cannot be credited. The debt to Fowler amounted to $262 50 cents; it is not stipulated how much of it Hopkins contemplated paying, nor does it appear at what time or times the $262 50 became due. By an admission of the parties, filed as evidence, it appears that ‡ 150, the price of the fifty acres of land on which Stephenson lived, was due to Fowler on the 15th of May, 1811, and that- Hopkins paid it, but it does not appear that Hopkins ever paid Fowler the remainder of the $262 50; nor is the tract of seventy-five acres in any way involved by the pleadings in this cause. Whether Hopkins claims it or Fowler has been paid for it, -we know not. Stephenson and Hopkins contracted with Fowler’s title bond before them. Under the idea that Hopkins was making a conditional purchase of the whole land, or the whole interest in Fowler’s bond, which was assigned to him without limitation, we think it must be intended that he was to pay Fowler the whole of the purchase money due for the land, and that the ‡23 paid Stephenson, was so'much given him for his bargain; and if it had appeared that Hopkins had gone ©n and paid Fowler fully, we should have been disposed to consider the transaction a conditional sale; but as he only paid a part, we think he treated the contract-as though the bond was assigned to him merely as a security. We cannot imagine that Hopkins was to get all the land by paying for a part. If then, he was not to get all, what part of the land was he to have, for that part of the purchase money which he might *344 pay5 conceding for argument that he was to be compensated in land? The contract is wholly silent, and it is perfectly arbitrary to say that he might pay $150 and claim the fifty acres, or pay $112 50 cents and claim the seventy-five acres absolutely. We cannot make contracts for parties, we can only expound those which they have made, and enforce their intentions, if to be collected from the written evidences. Viewing the whole case, as presented by the written contracts, we regard the assignment of Fowler’s bond to Hopkins, as a security for any partial payments made to Fowler.
Believing, therefore, that Stephenson had the right to redeem, the next question turns on the nature of his right of redemption. Is it such that it may be asserted and enforced at all times, or is it such that a chancellor may, under some circumstances, refuse to allow and enforce it? And do any such circumstances exist to justify such refusal in this case? At common law, when the mortgagor failed to comply with the! conditions of the mortgage, the estate was absolutely forfeited to the mortgagee. The equity of redemption was an invention of the courts of chancery, to“'mitigate the hardships of an absolute forfeiture upon a trifling consideration. Mortgages are, in the general, nothing more than securities for the loan of money, and the thing mortgaged so often exceeded, in value, double the debt, that courts of equity interposed where payment was not made on the day, to prevent the loss which the mortgagor would sustain if his property was taken for half its value; and thus an equity of redemption was attached to mortgages. If the money lent, had uniformly equalled the full value of the thing mortgaged, the doctrines of the law in relation to equities of redemption, would, in all probability, never had an existence. And now, where the mortgagor makes application to the chancellor to redeem, we have no doubt he ought not to be permitted todo so, if it can be shown that he received advances to the value of the thing mortgaged, and that by his delay an unreasonable length of time, or by any other conduct of his, he would inflict injury unjustly on the mortgagee. The proof in this cause does, in our opinion, make out such a case as would authorize and require the chaiu *345 fcelior to refuse his aid to Stephenson-. It is satisfactorily established; that thé money paid Stephenson, and that paid Fowlef by Hopkins, was a fair price for the fifty acres of land at the date of the contract; that lands of equal quality, and with improvements not much inferior; in the same neighborhood; were sold at mufch less per a'cre. It is shown that Hopkins was in possession eight of nine year's before Stephenson filed his bill to redeem, and that Hopkins had improved the land and rendered it Wore valuable by his labor. It is proved by the subscribing witness; to the bond executed by Hopkins to Stephenson, that it was the intention of the parties, at the time, to make a conditional sale of the fifty acres, and hot a mortgage; that Hopkins refused to pay Fowlef fof the seventy-five acres, or to have any thing to do with that, and that he took an assignment of Fowler’s bond, with a view to get Fowlef to separate the seVenty-five and fifty acres, and to secure the fifty acres to Hopkins; and that if B’owler would not do so, then Hopkins would have nothing to do with the land; but was to have a colt; then delivered to him by Stephenson, for the $23, and which colt was returned to Stephenson after Foivler had secured thé fifty acres to Hopkins. It is true, that this testimony of the subscribing witness would show, that the parties were unfortunate in conveying their meaning, by the manner in which their contract was reduced to writing; and could not be received to vary the effect and legal operation of the writings, where there has been no allegation of fraud of mistake; but we conceive it may be properly admitted, to rebut the equity attempted to be set up, and to show; that Hopkins Was a bona fide holder, in his own right, and not as mere mortgagee, receiving the profits in discharge of his debt. It is also shown, that after the time Stephenson; by contract, was bound to pay Hopkins, the latter offered to take his money and give up the land; which proposition was not then acceded to by Stephenson, who offered to do it at a subsequent time, when the land had risen in value. Under these circumstances, we are of opinion, that Hopkins, holding the legal title and in possession, ought not to be disturbed, and that Stephenson’s equity was not such as to justify the inters position of the chancellor.
Itis erronea^arty61*™*4 ■whose favor conveyance has beén'de creed, upon payment of money, to sum deposited in court, unless thedegedaAo the" conveyance,
Denny and Mills, for the plaintiff.
The recor<3 shows that after the circuit court bait decreed a conveyance, from Hopkins and bis pendente vendee, to Stephenson, upon his paying Hopkins <¡¡¡164, the balance' due, after settling an account taken ^or ren*-s an<^ improvements, that Stephenson brought the said $164 into couft and deposited it with the clerk for Hopkins, as required by the court. At a SLlt<sequent period, by order of the court, Stephenson was permitted to withdraw the money so deposited* This was clearly erroneous. As the record now stands, Stephenson has the money and also a decree for the *und. He cannot have both, and having come into court and taken the money again, it furnishes another reason why he should not have the land. We would a'so remark, that the decree of the circuit court is er« roneousin regard to the settlement of the accounts for rents and improvements; Hopkins is allowed pay for the improvements made by him, and he is charged rent upon ground cleared by his own labor* This is wrong. A mortgagee in possession ischargablewith the profits of the estate as he received it, and he is to be allowed,out of the profits, for necessary repairs; but he cannot make the mortgagor his debtor, by putting improvements on the land, nor should the mortgagor be allowed to raise an account for the profits of such additional improvements. See Moore vs. Cable, 1 Johnson’s Chan. Repts. 387.
The decree of the circuit court is reversed, with directions to thatcourt to dismiss the complainant’s bill, The appellants must recover costs.